UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

In Re: ) Chapter 13
) Case No. 99-80231
VIVIAN LEWIS REED, )
SS# 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 )
)
)
_____ )

## MOTION FOR RELIEF FROM STAY AND FOR RELIEF FROM CO-DEBTOR STAY APPLYING 11 U.S.C. Section 362(d), 1301, FOR RATIFICATION OF FORECLOSURE SALE AND AFFIRMATION OF POST FORECLOSURE SALE RECORDATION OF FORECLOSURE DOCUMENTS AND TRUSTEE'S DEED

Conseco Finance Servicing Corp., f/k/a Green Tree Financial Servicing Corporation, ("Secured Creditor"), by and through its undersigned counsel, respectfully requests this Court, pursuant to Rule 4001 and 9014 of the Rules of Bankruptcy procedure and Sections 362(d) and 1301 of the Federal Bankruptcy Code, enter its order granting the Secured Creditor relief from the automatic stay provision and co-debtor stay, ratifying the foreclosure sale on the debtor's property, and affirming the post-foreclosure recordation of foreclosure documents and Trustee's Deed.

In support thereof, Conseco shows the Court as indicated below.

1. On or about July 28, 1999 Vivian Lewis Reed (hereinafter referred to as "the Debtor") executed a Promissory Note ("Note") in the original amount of $109,040.00, a copy of the Note is attached hereto as Exhibit A and incorporated herein by reference.

2. The Note referred to in the preceding paragraph is secured by a Deed of Trust on Cornerstone Drive, Lot 14, in the City/Town/Village of Oxford, County of Granville, State of North Carolina and more particularly described in a Deed of Trust recorded in Book 722, Page 498, in the Granville County Registry, North Carolina. A copy of the Deed of Trust is attached hereto as Exhibit B and incorporated herein by reference.

3. Eric Lewis Reed, husband of the Debtor, is also listed as a Grantor on the Deed of Trust. Eric Lewis Reed is referred to herein as "the Co-Debtor". Eric Lewis Reed's Chapter 13 bankrptcy

(00-89019) was dismissed on October 13, 2000.

4. On or about December 2, 1998, Conseco initiated a foreclosure action. A foreclosure sale was authorized by the Clerk of Court for Granville County (hereinafter "Clerk") and scheduled for December 30, 1998.

5. The foreclosure sale was held on January 28, 1999 wherein Green Tree Financial Servicing Corporation, now known as Conseco, became the last and highest bidder.

6. A Report of Foreclosure Sale was filed with the Granville County Clerk of Court on January 28, 1999.

7. On or about February 1, 1999, Debtor filed a Petition with the United States Bankruptcy Court for the Middle District of North Carolina for relief under Chapter 13 of the United States Bankruptcy Code bearing case number 99-80231 C-13D.

8. Unaware of the bankruptcy filing, the Substitute Trustee filed a Substitute Trustee's Deed on February 18, 1999, Book number 772, Page 659, Granville County Registry.

9. The Substitute Trustee was made aware of the bankruptcy filing on February 25, 1999 and ceased foreclosure efforts immediately upon knowledge of the bankruptcy filing.

10. Upon information and belief, the debtor's bankruptcy was dismissed on or about November 7, 2000.

11. Conseco should be granted relief from automatic stay and the foreclosure resulting in the sale of the aforementioned real property and the foreclosure of the property should be ratified and affirmed.

12. Conseco will suffer irreparable injury, loss, and damage in the event relief is not granted.

**BASED UPON THE FOREGOING,** Movant respectfully requests this Court as follows:

1. That the stay imposed by 11 U.S.C. Section 362 (a) and the Co-Debtor stay imposed by 11 U.S.C. Section 1301 of the Federal Bankruptcy Code be modified, annulled, or terminated and relief as to the Debtor and the Co-Debtor/Co-Mortgagor be granted, the foreclosure action, including without limitation, the foreclosure sale held on January 28, 1999 should be in all respects ratified

and confirmed notwithstanding the debtor's bankruptcy filing on February 1, 1999;

    2. The hearing of this motion be the final hearing under 11 U.S.C Section 362(c) and any preliminary hearing consolidated herein and Orders entered accordingly; and

    3. It have such other and further relief as the Court deems just and proper.

This ____27____ day of April, 2001.

**JOHN A. MEADOWS, P.A.**

By: _____/s/ John A. Meadows_____
John A. Meadows, Esquire
2596 Reynolda Road, Suite C
Winston-Salem, North Carolina 27106
Telephone: (336) 723-3530
Attorney for Movant
NC Bar No.: 13237

3

## CERTIFICATE OF SERVICE BY MAIL

The undersigned hereby certifies that on the 27 day of April, 2001 he served copies of the attached **MOTION FOR RELIEF FROM STAY** by placing said copies in postpaid envelopes addressed to the persons hereinafter named, at the places and addresses stated below, which are the last known addresses, and by depositing said envelopes and their contents in the United States Mail at Winston-Salem, North Carolina.

TO: Richard M. Hutson, II, Trustee
    Chapter 13 Trustee
    P.O. Box 3613
    Durham, North Carolina 27702

    Donald D. Pergerson, Esquire
    P.O. Box 2289
    Henderson, North Carolina 27536
    Attorney for Debtor

    Vivian Lewis Reed, Debtor
    4089 Cornerstone Drive
    Oxford, North Carolina 27565

    Eric Raymon Reed, Co-Debtor
    4089 Cornerstone Drive
    Oxford, North Carolina 27565



_____
John A. Meadows

4

CT 15 34 011 (4/96)

| VIVIAN LEWIS REED<br><br>CORNERSTONE DR. (LOT 14)<br>OXFORD, NC 27565<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above,<br>joint and severally. | GREEN TREE FINANCIAL SERVICING<br>CORPORATION<br>3101 POPLARWOOD COURT SUITE 117<br>RALEIGH, NC 27604<br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its<br>successors and assigns. | Loan Number _____<br>Date __JULY 28, 1997__<br>Maturity Date _____<br>Loan Amount $ 109040.00<br>Renewal Of _____ |

For value received, I promise to pay to you, or your order, at your address listed above the **PRINCIPAL** sum of ____
ONE HUNDRED NINE THOUSAND FORTY AND NO/100 DOLLARS _____ Dollars $ __109040.00__

___ **Single Advance:** I will receive all of this principal sum on _____. No additional advances contemplated under this note.

XX **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this no
On __date of first advance__ I will receive the amount of $ __13000 (land value)__ and futu
principal advances are contemplated.
Conditions: The conditions for future advances are __1st advance(adv): real property appraisal & legal premises;__
__2nd adv: land improvement invoices, lien waivers, customer advance authorization ("CAA"); 2nd or 3rd adv:__
__bonds & recap & CAA; final adv: certificate of occupancy or inspection report & CAA.__

___ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one tim
This feature is subject to all other conditions and expires on _____
XX **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all oth
conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from __date of first advance__ at the rat
of __7.00__ % per year until the principal balance is fully paid.

N/A **Variable Rate:** This rate may then change as stated below.
___ **Index Rate:** The future rate will be _____ the following index rate: _____
Prepayment Refund: I may prepay all or part of this note without penalty. If I prepay in full, you
will refund part of the finance charge.
___ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
___ **Frequency and Timing:** The rate on this note may change as often as _____
A change in the interest rate will take effect _____
___ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____
or less than _____ %
**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
___ The amount of each scheduled payment will change. ___ The amount of the final payment will change.

**ACCRUAL METHOD:** Interest will be calculated on a __simple interest__ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in fu
as stated below:
___ on the same fixed or variable rate basis in effect before maturity (as indicated above).
___ at a rate equal to _____
XX **LATE CHARGE:** If a payment is made more than __15__ days after it is due, I agree to pay a late charge of ___
$ 5.00 OR 5.00% OF THE PAYMENT, WHICHEVER IS LESS
___ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ___ are ___ are not include
in the principal amount above:

**PAYMENTS:** I agree to pay this note as follows.
XX **Interest:** I agree to pay accrued interest __during the construction period on a monthly basis on cumulative amounts__
__advanced, and principal & interest monthly thereafter until the contract is fully paid.__
XX **Principal:** I agree to pay the principal __in 360 monthly installments, beginning no later than 45 days after the__
__completion of the construction funding period.__
XX **Installments:** I agree to pay this note in __360__ payments* The first payment will be in the amount o
$ __725.45__ (Principal & Interest) and will be due __approximately 30 days__
__from final disbursement__. A payment of $ __725.45__ will be du
_____ thereafter. The final payment of the entire unpaid balance of principa
and interest will be due __360 months from last construction disbursement__
monthly

* The payment schedule is in addition to and shall begin subsequent to the construction period interest only payments.
**UNIVERSAL NOTE**
© 1991 Bankers Systems, Inc., St. Cloud, MN Form CT-A UN-AZ NC 5/96                        CT-15 34 011 (4/96) page 1 of

the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

DEFAULT: I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season, if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

REMEDIES: If I am in default on this note you have, but are not limited to, the following remedies.

(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).

(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.

(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.

(4) You may refuse to make advances to me or allow purchases on credit by me.

(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

COLLECTION COSTS AND ATTORNEY'S FEES: I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

WAIVER: I give up my rights to require you to do certain things. I will not require you to.

(1) demand payment of amounts due (presentment);

(2) obtain official certification of nonpayment (protest), or

(3) give notice that amounts due have not been paid (notice of dishonor).

ARBITRATION: All disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract, or the validity of this arbitration clause or the entire contract, shall be resolved by binding arbitration by one arbitrator selected by you with consent of us. This arbitration contract is made pursuant to a transaction in Interstate commerce, and shall be governed by the Federal Arbitration Act at 9 U.S.C. Section 1. Judgment upon the award rendered may be entered in any court having jurisdiction. The parties agree and understand that they choose arbitration instead of litigation to resolve disputes. The parties understand that they have a right or opportunity to litigate disputes through a court, but that they prefer to resolve their disputes through arbitration, except as provided therein. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY TRIAL, EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO COURT ACTION BY YOU (AS PROVIDED HEREIN). The parties agree and understand that all disputes arising under case law, statutory law, and all other laws including, but not limited to, all contract, tort, and property disputes, will be subject to binding arbitration in accord with this contract. The parties agree and understand that the arbitrator shall have all power provided by the law and the contract. These powers shall include all legal and equitable remedies, including, but not limited to, money damages, declaratory relief, and injunctive relief. Notwithstanding anything hereunto the contrary, you retain an option to use judicial or non-judicial relief to enforce a mortgage, deed of trust, or other security agreement relating to the real property secured in a transaction underlying this arbitration agreement, or to enforce the monetary obligation secured by the real property, or to foreclose on the real property. Such judicial relief would take the form of a lawsuit. The institution and maintenance of an action for judicial relief in a court to foreclose, upon any collateral, to obtain monetary judgment, or to enforce the mortgage or deed of trust, shall not constitute a waiver of the right of any party to compel arbitration regarding any other dispute or remedy subject to arbitration in this contract, including the filing of counterclaim in a suit brought by you pursuant to this provision.

OBLIGATIONS INDEPENDENT: I understand that I must pay this note even if someone else has also agreed to pay it (by for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full). I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

CREDIT INFORMATION: I agree and authorize you to obtain credit information about me from time to time (for example, by requesting a credit report) and to report to others your credit experience with me (such as a credit reporting agency). I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

NOTICE: Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

© 1991 Bankers Systems, Inc. St. Cloud, MN Form CTH-UNLAZ NC 4/ 2/96

CT-15-34-31 (4/96) page 4 of 4

**Book** **Page**
# 0722 0498

This document was prepared by: Robert K. Catherwood

Please return after recording to: Robert K. Catherwood
P.O. Box 1624
Oxford, NC 27565

KATHRYN CREWS
REGISTER OF DEEDS
GRANVILLE COUNTY, NC

FILED:
DATE: July 28, 1997
TIME: 3:46 P.M.
B:  722
    498

——— State of North Carolina ——— Space Above This Line For Recording Data ———
CT-15-34-090 (11/94)

## EQUITY LINE OF CREDIT DEED OF TRUST
(With Future Advance Clause Governed by Article 9, Chapter 45, NCGS)

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is JULY 28, 1997 and the parties, their addresses and tax identification numbers, if required, are as follows:

   GRANTOR: VIVIAN LEWIS REED and husband, Eric Ramon Reed
   CORNERSTONE DR. (LOT 14)
   OXFORD, NC 27565

   ...... If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

   TRUSTEE: Don E. Fuquay

   LENDER: GREEN TREE FINANCIAL SERVICING CORPORATION
   3101 POPLARWOOD COURT  SUITE 127 , RALEIGH NC 27604

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

   All of the property located at CORNERSTONE DR. (LOT 14) , in the City/Town/Village of OXFORD , County of GRANVILLE , State of NC , in which the Borrower has an ownership, leasehold or other legal interest. This property is more particularly described on the schedule titled "Additional Property Description" which is attached hereto as Exhibit A. together with a security interest in that certain 1996 . 68 X 28 PALM HARBOR mobile home, serial number VPNC11403 . ** SEE WORDING ON TOP OF PAGE 2 **
   The property is located in GRANVILLE at
   (County)
   CORNERSTONE DR. (LOT 14) OXFORD North Carolina 27565
   (Address) (City) (ZIP Code)

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

NORTH CAROLINA - DEED OF TRUST (NOT FOR FNMA, FHLMC, FHA OR VA USE)
©1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form GTH-MTGLA2NC 11/22/94                                                GT-15-34-090 (11/94) (page 1 of 8)

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.

    Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

11. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

12. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, as additional security all the right, title and interest in and to any and all existing or future leases, subleases, and any other written or verbal agreements for the use and occupancy of any portion of the Property, including any extensions, renewals, modifications or substitutions of such agreements (all referred to as "Leases") and rents, issues and profits (all referred to as "Rents"). Grantor will promptly provide Lender with true and correct copies of all existing and future Leases. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default under the terms of this Security Instrument.

    Grantor agrees that this assignment is immediately effective between the parties to this Security Instrument and effective as to third parties on the recording of this Deed of Trust. Grantor agrees that Lender or Trustee may take actual possession of the property without the necessity of commencing legal action and that actual possession is deemed to occur when Lender, or its agent, notifies Grantor of default and demands that any tenant pay all future Rents directly to Lender. On receiving notice of default, Grantor will endorse and deliver to Lender any payment of Rents in Grantor's possession and will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Any amounts collected will be applied as provided in this Security Instrument. Grantor warrants that no default exists under the Leases or any applicable landlord/tenant law. Grantor also agrees to maintain and require any tenant to comply with the terms of the Leases and applicable law.

13. **LEASEHOLDS; CONDOMINIUMS: PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

14. **DEFAULT.** Grantor will be in default if any party obligated on the Secured Debt fails to make payment when due. Grantor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

15. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

    At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence

©1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form GTH-MTG-AZNC 11/22/94                CT-15-TA-090(11/94) (page 3 of 5)

18. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement, or other lien document.

19. **INSURANCE.** Grantor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

20. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

21. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

22. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

23. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

©1994 Bankers Systems, Inc., St. Cloud, MN (1-800-397-2341) Form GTH-MTG-AZ-NC 11/22/94    CT 15/14 090 (11/94) (page 5 of 6)

## EXHIBIT A

All of Lot 14 of Cornerstone of Antioch Subdivision as shown on plat recorded in Map Book 20, Page 52, Granville County Registry, reference to which is made for more complete description. Also conveyed herewith is a permanent right of ingress, egress, and regress to and from the property hereinabove described and SR 1600 along Cornerstone Drive as shown on the plat referred to hereinabove.

# STATE OF NORTH CAROLINA
## CERTIFICATE OF TITLE

97436729

MVR-1 (Rev. 1/94)

| TITLE NUMBER | GROSS WEIGHT | LICENSE FEE | TITLE ISSUE DATE | PREV TITLE |
|---|---|---|---|---|
| 770253972830115 | | | 10/14/1997 | |

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| VPNC11403 | 1998 | BAYS | MH |

MAILING ADDRESS

GREENTREE FINANCIAL SERVICING CORP
3101 POPLARWOOD CT
STE 127
RALEIGH   NC   27604-1045

OWNER(S): VIVIAN LEWIS REED
NAME AND ADDRESS: LOT 14 CORNERSTONE DR
OXFORD   NC   27565

THIRD LIENHOLDER:            DATE:

SECOND LIENHOLDER:           DATE:

FIRST LIENHOLDER:            DATE: 10/10/1997
GREENTREE FINANCIAL SERVICING CORP
3101 POPLARWOOD CT STE 127
RALEIGH   NC   27604-1045

1ST RELEASED BY _____ DATE _____

ADDITIONAL LIENS:

COMMISSIONER OF MOTOR VEHICLES

57495604
115   T1C1156

ANY ALTERATIONS OR ERASURES VOID TITLE